[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Ruling Re: Plaintiffs' Request For Remand To Administrative Agency For Further Proceedings
By memorandum of decision dated March 27, 1990 (filed 3/28/90), this court affirmed the agency's order(s) and dismissed plaintiffs administrative appeal. On appeal to the Connecticut Supreme Court, the decision was affirmed in part, that Court holding: (1) that the statutory section of the Solid Waste Management Act placed in question was not unconstitutionally vague, and (2) that there was substantial evidence in the record supporting the administrative finding that plaintiffs operated an unpermitted solid waste facility. However, the supreme Court remanded the case for this court to conduct additional review pertaining to the reasonableness of the underlying order(s); in Part III A and B of its opinion, the Supreme Court set out the applicable standards relating to joint and several liability. Connecticut Building Wrecking Co. v. Carothers, 218 Conn. 580
(1991).
This court (in its 3/27/90 decision), after concluding that the agency's (hearing officer's) assessment of liability against the plaintiffs was reasonable, had declined to review the reasonableness of that portion of the administrative order(s) requiring plaintiffs to remove all solid waste, exclusive of clean fill, from the site; it was concluded, erroneously, that the reasonableness of the order(s) should be addressed in any enforcement proceeding which might be initiated by DEP in the event plaintiffs did not comply with the terms of the order(s). Thus, on remand to this court, the issue now becomes whether the scope of the cleanup order(s) issued administratively to the plaintiffs is reasonable based on the administrative record, or whether the imposition of joint and several responsibility upon the plaintiffs constitutes an abuse of the agency's discretion. In addressing the aforestated issue, this court has once again carefully reviewed the entire, voluminous administrative record certified in this case.
With regard to the issue remanded for this CT Page 3652 court's further review, the Supreme Court stated: ". . .judicial review of any environmental cleanup order should be conducted with reference to principles of joint and several liability, as limited by the doctrine of apportionment expressed in [Sections 433A and B, Restatement (Second) of Torts]."
Under Restatement Section 433B, the DEP has the burden of proving that plaintiffs caused the environmental harm, except as follows: (1) where the conduct of two or more actors has combined to bring about the harm, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each actor; and, (2) where the conduct is that of two or more actors, and it is proved that the harm has been caused by only one of them, but there is uncertainty as to which one has caused it, the burden rests upon each such actor to prove that he has not caused the harm. Section 433A provided: (1) damages for harm are to be apportioned among two or more causes where there are distinct harms, or where there is a reasonable basis for determining the contribution of each cause to a single harm.
General Statutes Section 22a-6a(b) provides: "[w]henever two or more persons knowingly or negligently violate any provision of section . . . 22a-208, 22-208a . . . or any regulation, order or permit adopted or issued thereunder by the commissioner and responsibility for the damage caused thereby is not reasonably apportionable, such persons shall, subject to a right of equal contribution, be jointly and severally liable. . ." The Supreme Court rejected DEP's contention that under the statute, once a violation of the Act was established, joint and several responsibility attached, subject to a right to seek contribution, and held that the enactment did not preclude application of common law principles of joint and several liability, with limitations as expressed by the Restatement, in the context of remedial orders.
The Supreme Court stated the issue to be determined by this court, on remand, as follows: ". . . whether [DEP] ever addressed the issue of combined or alternative causes for the environmental harm caused and made requisite findings necessary for imposing upon plaintiffs responsibility for cleaning up the waste deposited by other dumpers." The Supreme Court further stated, citing Restatement Section 433A, that "[o]nly in the event that there is no reasonable basis for apportionment of the damages caused to the environment among CT Page 3653 those whose illegal activities have contributed to such harm would joint and several liability be appropriate." (Emphasis added). The Supreme Court directed that if the administrative record on the aforestated issues is determined to be inadequate, the proper course of action for this court would be to remand the matter for additional agency proceedings.
The proposed agency decision (1/13/88) contains a finding, adopted by the Final Hearing Officer, which reads in part: "[t]he respondents [plaintiffs], along with others, deposited various types of solid wastes at [the site] between April and September 1985." (Emphasis added). In this court's view, that finding is amply supported by the substantial evidence before the administrative tribunal; as DEP points out, several Clearview Drive residents testified at the agency level respecting dumping done by plaintiffs, as well a by others. Similarly, the Final Hearing Officers concluded that the administrative record "is replete with evidence from residents, contractors and DEP employees as to the nature of the solid . . waste deposited [at the site]," which conclusion this court agrees is supported by the substantial evidence before the agency. There was evidence relating to the dumping of brick from Beardsley Terrace, rotten leaves, mattresses and springs from the Bedding Shack, cement, scrub, wood, refrigerator(s), dirt, tree trunks, leaders and gutters from houses, rock and asphalt, etc. The initial hearing officer (Proposed Decision, 1/13/88) visited the site with the parties and/or their representatives and observed demolition debris, concrete, wood, tires, stumps, etc. Furthermore, the Proposed Decision, adopted by the Final Hearing Officer, identified the environmental harms or on site hazards caused by the solid waste deposits as including; steep embankments subject to cracking, which could collapse on an adult or a child; dead trees, killed by solid waste, which could fall on persons or property; objects protruding from solid waste, that can be dangerous to children; uneven settling that can result in cave-ins; potential for below or above ground fires, or both, with accompanying smoke problems; methane gas, colorless and odorless, generated from organic decomposition, having the potential to migrate to adjacent homes and explode and cause fires; methane gas which could be generated for twenty years from this site; and, potential downgradient pollution of potable wells from leachate generated from the landfill. Neither the findings nor the evidence causally connects any certain harm to any specific deposited waste; rather, as the record stands, the environmental harms or hazards found to exist stem from the over-all deposition of solid wastes at the Clearview site. CT Page 3654
DEP relies primarily on the administrative finding contained in the Proposed Decision, adopted and affirmed by the Final Hearing Officer (10/28/88), which reads as follows: "[w]hile the respondents [plaintiffs] are not the only source of illegal waste deposited on [the] site, the undersigned cannot distinguish with any degree of certainty the nature and extent of the waste deposited by the respondents on the site from those of other depositors."
DEP contends that this administrative finding is supported by evidence presented to the administrative tribunal, "as well as a common sense view of the entire record." The evidence relied upon consists of the testimony of two Clearview residents, one who stated that she could not separate the waste deposited by plaintiffs from that placed by Bridgeport Wrecking, and the other who testified that he could not distinguish the waste placed in his yard by plaintiffs from that placed there by New England Demolition. Viewing the record as a whole, DEP argues that it demonstrates a number of persons and corporations dumped various solid wastes at the site and that it is reasonable "to infer" from the testimony of the residents "that no distinct `cells' of waste, either according to the type of waste or person dumping can be located." (See: Defendant's Brief, 11/22/91, p. 6-7; also, Oral Argument conducted 12/19/91).
While the proposed and final decisions set forth the initial hearing officer's inability to "distinguish with any degree of certainty the nature and extent of the waste deposited by [plaintiffs] . . . from [that] of other depositors, and although that circumstance may find some basis in the testimony of the Clearview residents, as well as the officer's own inspection of the site, the threshold question, in the court's view, based on the Supreme Court's language, is whether the agency ever really considered the question of apportionment. As the Supreme Court stated, this court must "determine whether the agency ever addressed the issue of combined or alternative causes for the environmental harm caused and make the requisite findings necessary for imposing upon the plaintiffs responsibility for cleaning up the waste deposited by other dumpers." In this regard, it cannot be overlooked that plaintiffs, in the administrative proceeding, undertook to join as parties the other solid waste depositors, which undertaking was strenuously and successfully opposed by DEP. In the Final Decision, it was emphatically stated: CT Page 3655
 "Respondents [plaintiffs] apparently believe that [the other solid waste depositors] should be parties in this matter so that each potential participant's share of liability can be apportioned. However, as stated above, this is an administrative proceeding to determine, in the first place, whether the Orders should be affirmed, modified or revoked. First, liability must be established." (Emphasis added).
As the above language clearly indicates, and as the entire record, in this court's view, certainly reveals, the obvious focus of the administrative proceeding was to determine the plaintiffs' liability, if any, and not to ascertain if each identified depositor's liability could be apportioned. I cannot conclude that the administrative agency "addressed the issue of combined or alternative causes for the environmental harm"; in actuality, the agency, in denying joinder of other depositors, asserted as its reason that the administrative proceeding involved merely plaintiffs' liability.[1] On the administrative record as it stands, this court cannot find that "there is no reasonable basis for apportionment of the damages caused to the environment among those who illegal activities have contributed to such harm". It is this court's opinion that issues of apportionment were never addressed by the agency, it having been the agency's position that the administrative determination concerned just plaintiffs' liability. Accordingly, it is hereby found, on the basis of the inadequacy of the record, and applying the mandate of the Supreme Court decision, that the scope of the agency's cleanup order(s) issued to the plaintiffs constitutes an abuse of agency discretion.
Concluding that the administrative record is inadequate as to the administrative agency's having considered the issue of apportionment, and that therefore the scope of the remedial order(s) constituted an abuse of the agency's administrative discretion, the court, consistent with the Supreme Court's decision, hereby vacates that portion of the order(s) requiring plaintiffs to clear the site, and remands the matter to the agency for further proceedings to determine if there is a reasonable basis for apportionment of damages caused to the environment,[2] or, for either a modification of the order with or without additional hearings, or, if the agency so chooses, dismissal of the order.[3]
CT Page 3656
MULCAHY, J.